MELVIN H. DeGRAFF, Plaintiff-Appellant, *v.* BURTON R. KAPLAN, Defendant-Appellee.

First District (1st Division)   No. 81—1093

Opinion filed September 20, 1982.

Allen C. Engerman, Barry A. Erlich, and Peter Berman, all of Engerman, Erlich & Berman, Ltd., of Chicago, for appellant.

Rosemarie J. Guadnolo, Andrew B. David, and Judy I. Byrd, all of Arvey, Hodes, Costello and Burman, of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

Plaintiff filed an action seeking an accounting of partnership assets derived from trading on the International Monetary Market. The trial court held that an accounting was not warranted and entered judgment for defendant. The trial court also denied defendant's motions for attorney fees.

On appeal, plaintiff contends (1) the trial court erred in admitting extrinsic evidence to interpret the terms of a partnership agreement and (2) the finding that plaintiff allowed defendant to use a partnership asset for defendant's benefit is not supported by the evidence. In a cross-appeal, defendant argues the trial court erred in denying his motion for fees.

We affirm.

Plaintiff Melvin DeGraff and defendant Burton Kaplan were partners in the accounting firm of DeGraff, Kaplan & Company. In October 1973, they purchased a membership seat on the International Monetary Market (IMM), a division of the Chicago Mercantile Exchange. Each contributed one-half of the purchase price of $14,500. Their written agreement provided:

> "Melvin H. DeGraff and Burton R. Kaplan hereby agree that they are equal partners in the below described venture. Any profits, expenses, or other obligations or receipts from the venture received or paid by either of the parties shall be held in trust for the benefit of the parties or paid on behalf of both parties. Name of Venture: Membership Seat on the International Monetary Market of the Chicago Mercantile Exchange. Other Parties involved, if any: None.
> Date: 10/31/73
>
> /S/Melvin H. DeGraff
> /S/Burton R. Kaplan"

The agreement was a blank partnership form. DeGraff filled in the name of the parties and the description of the venture.

Kaplan acquired the membership and opened the trading account in his own name. On the application for membership, Kaplan noted that he intended to assign the right of membership commission rates to DeGraff, Kaplan & Company when various future positions were closed. The condition never occurred and therefore the assignment was not made.

Near the time DeGraff and Kaplan purchased their membership seat, DeGraff purchased another IMM seat in his own name in order to conduct his own trading. Vittorio Laudati paid the purchase price. DeGraff applied for a membership but conducted no trading. The seat

was eventually sold. The agreement entered into by DeGraff and Laudati distinguished between trading and the purchase of a seat. It provided that only Laudati would benefit from any increase in the value of the membership, but that Laudati would not participate in trading profits or losses.

In December 1974, Kaplan opened a trading account with his personal funds. Kaplan testified that DeGraff did not object and made no claim to the trading proceeds until July 1978. DeGraff never offered to contribute to the trading account nor did Kaplan ask for contributions from DeGraff. On the other hand, DeGraff testified that he asked Kaplan several times each year about the results of trading and that he relied on Kaplan's representations regarding trading profits and losses. In 1974, 1975, and 1976, Kaplan told him no profits or losses occurred. DeGraff further testified that in 1977 and 1978, Kaplan stated DeGraff would get his share of the profits, but no distribution could be made because he needed the funds for trading. Kaplan never produced trading records for the account when DeGraff requested them.

Kaplan reported the trading profits and losses on his personal tax returns. DeGraff neither listed profits or losses nor claimed any right to them on his tax returns. Richard Hoeh, a certified public accountant with a graduate degree in business administration and a former employee of the Internal Revenue Service, testified as an expert witness. He testified that if DeGraff believed he had an interest in the trading profits or losses, he was required to disclose this fact on his tax returns even if he did not know the specific amount. He further testified that he examined the returns filed by DeGraff and Kaplan in the years 1974 through 1977. Reporting capital gains and losses realized by trading on the IMM would have benefitted DeGraff in these years, but DeGraff ignored them. Only Kaplan reported them.

Lenore Annes, a secretary for the accounting firm of DeGraff, Kaplan & Company, testified that in 1977 and 1978, DeGraff stated he wanted to restructure the partnership agreement with Kaplan so that he would profit from the trading. DeGraff wanted an agreement similar to that entered into by his friends whereby partners would share equally in the profits.

In 1978, Kaplan withdrew $150,000 to $200,000 from his trading account. No profits had been withdrawn prior to this time. On July 27, 1978, DeGraff served on Kaplan a demand to share in the trading profits. Kaplan did not account for the income and expenses of the IMM trading and did not share profits or commissions.

On December 13, 1978, DeGraff served notice on Kaplan to dis-

solve the partnership. He immediately filed an action to enjoin Kaplan from further trading on the IMM and for an accounting of partnership receipts and disbursements. The parties agreed that Kaplan would purchase DeGraff's interest in the seat for $80,000. The only issue remaining was whether DeGraff should share in the trading profits.

After trial, the court found that the partnership was limited to an investment in the IMM seat and that the partnership did not include trading activities of Kaplan. It further found that the parties intended the trading profits and losses to be Kaplan's exclusively and therefore an accounting was not required.

First, plaintiff contends the trial court erred in admitting extrinsic evidence to determine the intent of the parties. He maintains that the agreement clearly and unambiguously states that the parties were to share equally in profits and losses and extrinsic evidence was therefore unnecessary.

However, plaintiff fails to note the additional language in the agreement pertaining to and describing profits and losses. Specifically, the agreement provides that "Any profits, expenses or other obligations or receipts *from the venture* \*\*\* shall be held in trust for the benefit of the parties \*\*\*." (Emphasis added.) The venture was defined as a "[m]embership seat on the International Monetary Market of the Chicago Mercantile Exchange." The definition of the venture unquestionably is important in determining the nature of the partnership and the parties rights under the agreement.

Returning to the issue recited above, the following legal principles are applicable. The question of whether the language in a document is ambiguous is a matter of law to be decided by the trial court. (*Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 418 N.E.2d 59; *Ruskin v. Rodgers* (1979), 79 Ill. App. 3d 941, 399 N.E.2d 623.) An ambiguous contract is one that is capable of being understood in more than one manner. (*Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 414 N.E.2d 1152.) When the court determines that an ambiguity exists, extrinsic evidence may be introduced to ascertain the true meaning of the agreement. *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.; Rao v. Parvathaneni* (1979), 72 Ill. App. 3d 1, 390 N.E.2d 496.

■ Without the benefit of the evidence presented at trial, the partnership agreement was susceptible to two meanings. The first, consistent with plaintiff's theory, was that the parties intended the phrase membership to include subsequent trading. The second meaning was that the parties meant to share the profits from the member-

ship seat only. The term "membership seat on the International Monetary Market" is not a term of common, ordinary usage and as such is not easily defined. Thus the trial court properly allowed and considered extrinsic evidence to determine the intent of the parties.

Plaintiff further contends the trial court effectively added a term to the contract which did not exist by distinguishing between trading profits and losses and profits derived from a sale of the IMM membership. He further adds that if the parties intended to draw this distinction, they would have inserted an appropriate provision. However, the evidence presented at trial indicates a definite distinction between these two types of profits and losses. The parties specifically limited the partnership venture to a membership seat which, as the trial court found, did not include trading profits and losses. Had the parties intended to include trading profits, a provision similar to that in the DeGraff-Laudati agreement could have been inserted.

Second, plaintiff contends the trial court's finding that plaintiff consented to defendant's use of the partnership asset for defendant's benefit is not supported by the evidence.

■ However, we find sufficient evidence supporting the trial court's finding. DeGraff knew the difference between purchasing a seat and trading. This is evidenced by the differences between DeGraff's agreements with Kaplan and Laudati. Indeed, DeGraff completed the partnership agreement between himself and Kaplan and the DeGraff-Laudati agreement was prepared at DeGraff's direction. Also, Kaplan used his personal funds for trading and DeGraff never offered to contribute funds for trading. Kaplan reported all gains and losses on his tax returns. DeGraff, an accountant by profession, never disclosed a right to profits and losses on his returns.

In his cross-appeal, Kaplan contends the trial court erred in denying his motion for attorney fees under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 41).

The purpose of section 41 is to penalize a litigant who, in bad faith, brings vexatious or harassing actions based on false statements or brought without legal foundation. (*Farwell Construction Co. v. Ticktin* (1978), 59 Ill. App. 3d 954, 376 N.E.2d 621.) Because it is penal in nature, section 41 may be invoked only in cases falling strictly within its terms. (*Williams v. City of Chicago* (1977), 54 Ill. App. 3d 974, 370 N.E.2d 119.) The trial court's decision on this issue is entitled to great weight and will not be reversed absent a clear showing that such discretion was abused. *Williams v. City of Chicago*.

■ Granted, the trial court resolved the factual issues in favor of defendant. However, this alone does not entitle defendant to fees.

(*Theodorou v. Community Builders, Inc.* (1972), 6 Ill. App. 3d 277, 285 N.E.2d 474.) In view of the fact the agreement was ambiguous and susceptible to different interpretations, we cannot say that the action was brought in bad faith. We therefore will not disturb the ruling of the trial court on the motion.

The judgment of the circuit court is therefore affirmed.

Judgment affirmed.

CAMPBELL, P. J., and O'CONNOR, J., concur.