713 F.2d 319
 32 Fair Empl.Prac.Cas. (BNA) 1077,
32 Empl. Prac. Dec. P 33,750
AIR LINE STEWARDS AND STEWARDESSES ASSOC., LOCAL 550, TWU,
AFL-CIO, et al., Plaintiffs-Appellees,
v.
TRANS WORLD AIRLINES, INC., Defendant-Appellant.
Anne B. ZIPES, et al., Plaintiffs-Appellees,
v.
TRANS WORLD AIRLINES, INC., Defendant-Appellant.
 Nos. 82-2929, 82-2933.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 7, 1983.
Decided Aug. 1, 1983.
 
 Gordon B. Nash, Jr., Gardner, Carton & Douglas, Chicago, Ill., for defendant-appellant.
 Aram A. Hartunian, Hartunian, Futterman & Howard, Chicago, Ill., for plaintiffs-appellees.
 Before CUMMINGS, Chief Judge, COFFEY, Circuit Judge, and WEIGEL, Senior District Judge.*
 COFFEY, Circuit Judge.
 
 
 1
 The defendant, Trans World Airlines (TWA) appeals from the district court's decision that under the terms of a Settlement Agreement entered into between TWA and a class of former flight attendants, TWA is required to re-employ the former female flight attendants immediately upon the completion of certain retraining classes regardless of whether or not TWA has any present vacancies in its work force. The defendant, on the other hand, contends that the Settlement Agreement requires TWA to re-employ the flight attendants after they have completed retraining but only at such time as a vacancy exists. Reversed.
 
 I.
 
 2
 The complaint in this litigation was filed on August 8, 1970, alleging that between 1965 and 1970 the defendant TWA maintained a policy of terminating female flight attendants who became pregnant, and that such action was in violation of their rights under Title VII of the Civil Rights Act of 1964. After numerous pretrial motions and appeals from the disposition of these motions[1] the parties arrived at a Settlement Agreement, contingent upon approval by the district court pursuant to Fed.R.Civ.P. 26(e). The district court approved the settlement over the objection of the union representing current TWA personnel who might have been affected by the settlement (Independent Federation of Flight Attendants). The union objected to the settlement, contending that the Settlement Agreement would adversely affect current TWA flight attendants. The district court disagreed on the grounds that granting retroactive seniority to the returning class members would not adversely affect TWA's present employees as no currently employed flight attendant would be fired in order that one of the class members could be reinstated, and this decision was affirmed by this court, Air Line Stewards, etc. v. Trans World Airlines, Inc., 630 F.2d 1164 (7th Cir.1980), and ultimately by the Supreme Court, Zipes, et al. v. Trans World Airlines, Inc., 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).
 
 
 3
 In October of 1982 the plaintiffs filed a motion with the district court requesting an order that the Settlement Agreement be interpreted as entitling all class members to immediate re-employment by TWA upon the successful completion of their retraining classes. In addition to this declaratory relief, the plaintiffs also sought a permanent injunction compelling TWA to commence paying wages to all re-employed class members immediately upon completion of the retraining classes regardless of whether or not TWA had positions for the retrained flight attendants. The district court granted the plaintiffs' motion for declaratory relief on the grounds that "the settlement agreement, when read as a whole and considered in light of its fundamental purpose, does require that TWA re-employ the class members" and that TWA "is obligated to provide employment no later than the end of the last retraining class...." The defendant has appealed from the district court's decision.
 
 II.
 
 4
 Our resolution of the instant dispute hinges upon the construction of two sections of the Settlement Agreement. Section VI of the Settlement Agreement is entitled "Eligibility for Re-Employment" and provides as follows:
 
 
 5
 "TWA agrees to offer: (1) flight attendant retraining to all class members and (2) re-employment as flight attendants to those class members who satisfactorily complete such retraining. TWA will provide retraining classes, the last of which shall commence prior to the expiration of one (1) year following the Final Order Date. TWA will have no obligation to retrain or re-employ any class member following the end of such one (1) year period if such class member has either not qualified for such retraining or re-employment, has elected not to participate in such retraining or has elected not to accept such re-employment during such one (1) year period."
 
 
 6
 Section IX, entitled "Re-Employment Procedures," states:
 
 
 7
 "For the purpose of retraining applicants for re-employment, TWA will conduct retraining classes. TWA will notify each applicant for re-employment (in writing, giving at least thirty (30) days' advance notice) of the commencement date of the retraining class which she is to attend.
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 Each class member who successfully completes retraining will be permitted to select assignment to a flight attendant base (or bases) of her choice, at which a vacancy exists, provided that no flight attendant having greater seniority desires to fill such a vacancy. If a class member is unable to obtain a base assignment which she desires, she will be assigned to fill a vacancy at any base selected by TWA."
 
 
 11
 The district court, in interpreting the Settlement Agreement, noted that in section VI "TWA agrees to offer ... re-employment as flight attendants to those class members who satisfactorily complete such retraining," and that section IX of the Agreement grants the class members a "right to re-employment." Reading these two sections together, the district court concluded that "these terms unambiguously evidence the parties intent that TWA undertake an affirmative obligation to re-employ class members," and while section IX makes a class member's assignment to a base contingent upon a "vacancy," this section "has no effect whatsoever on the obligation to rehire." Finally, the district court declined to adopt TWA's position that it should not be required to rehire a flight attendant until a vacancy exists because "if TWA were permitted by the settlement agreement to indefinitely delay the re-employment of the class members, there would have been no reason to fix the definite time limit of April 19, 1982 from which training classes had to begin."
 
 III.
 
 12
 A settlement agreement is a contract and as such, "the construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally." Florida Educational Assoc. v. Atkinson, 481 F.2d 662, 663 (5th Cir.1973). When interpreting a contract under Illinois law, "[t]he intent of the parties to a contract must be determined with reference to the contract as a whole, not merely by reference to particular words or isolated phrases, but by reviewing each part in light of the others." LaThrop v. Bell Federal Savings & Loan Assoc., 68 Ill.2d 375, 378, 12 Ill.Dec. 565, 568, 370 N.E.2d 188, 191 (1977). The language of a settlement agreement must be construed literally in a straightforward manner, and courts must give full force and effect to each and every provision contained in these court-approved agreements. Robin v. Sun Oil Co., 548 F.2d 554, 557 (5th Cir.1977). Thus, in interpreting the Settlement Agreement between the plaintiffs and TWA, under well-settled rules of contract interpretation, this court must give effect to each and every section of the Agreement, and must read the different sections harmoniously, and accord each section its proper weight, and not read the sections out of context to achieve a desired result as the plaintiffs request.
 
 
 13
 Section VI, entitled "Eligibility for Re-Employment," is a separate and distinct section of the Settlement Agreement and establishes TWA's obligation to offer retraining to members of the plaintiffs' class and to offer re-employment only to those plaintiffs who satisfactorily complete the flight attendant retraining classes. While it is true that section VI requires TWA to offer retraining within one year following the effective date of the final order, section VI contains no reference to or language establishing a time frame within which TWA must offer the plaintiffs re-employment. Section VI merely obligates TWA to provide the opportunity for re-employment to a certain class of former flight attendants who successfully complete the retraining classes TWA is required to provide. Labeled "Eligibility for Re-Employment," section VI sets forth the conditions under which TWA will offer re-employment to the plaintiffs and there is no language in section VI that explains, defines or even refers to the plaintiffs' right to re-employment once they have become "eligible for re-employment." Thus, we must examine the other language in the contract referring to the time frame and/or the date of re-employment.
 
 
 14
 Section IX of the Settlement Agreement, on the other hand, is entitled "Re-Employment Procedures." This section states that upon the successful completion of retraining, class members "will be permitted to select assignment to a flight attendant base (or bases) of her choice at which a vacancy exists, provided that no flight attendant having greater seniority desires to fill such a vacancy." Section IX thus sets forth the circumstances under which class members must be re-employed once they have met the eligibility for re-employment set forth in section VI. While section VI conditions the eligibility for employment upon the successful completion of flight attendant retraining classes, the language in section IX conditions a plaintiffs' right to re-employment upon successful completion of the retraining class and upon the existence of a vacancy at a flight attendant base. As we have stated earlier, the language of sections VI and IX is clear and unambiguous, and must be read harmoniously in order that we might give the proper effect to the plain meaning of the Agreement, Hanley v. James McHugh Construction Co., 444 F.2d 1006 (7th Cir.1971), and we must read the contract as a whole, and not bifurcate it to reach a desired result. LaThrop, 68 Ill.2d at 381, 12 Ill.Dec. at 568, 370 N.E.2d at 191. We hold that the plain and unambiguous language of the Settlement Agreement, when construed as a whole, requires TWA to offer retraining classes to members of the plaintiffs' class within one year following the final order date, and further, TWA must offer employment to those class members who successfully complete these retraining classes within the given time frame but only at such time as a vacancy exists at a flight attendant base.[2]
 
 
 15
 Our decision that the proper interpretation of the Settlement Agreement requires TWA to rehire the plaintiffs only at such time as a vacancy exists at a flight attendant base is supported by this court's prior approval of the Settlement Agreement in Air Lines Stewards, etc. v. Trans World Airlines, Inc., 630 F.2d 1164 (7th Cir.1980). When the union appealed from the district court's approval of the Settlement Agreement, the union argued that the provisions of the Settlement Agreement granting the plaintiffs retroactive seniority would have an "adverse impact" on TWA's current flight attendants. It was the union's position that the Settlement Agreement would adversely affect current employees because if returning class members were granted retroactive seniority they would be able to displace currently employed flight attendants. This court rejected the union's position and interpreted the Agreement as providing that no currently employed flight attendant would be required to lose employment and further held that "providing positions for these reinstated attendants would normally be possible as a result of normal attrition of workers...." 630 F.2d at 1169. It implicitly follows that when a vacancy was created by "normal attrition," those flight attendants who had successfully completed retraining would be offered a position at the flight attendant base or bases where the vacancy existed.
 
 
 16
 The plaintiffs now contend that TWA is required by the Settlement Agreement to rehire members of the plaintiffs' class without regard to whether vacancies exist and without regard to the rights of current employees. However, we will not permit the plaintiffs to argue in one appeal to this court that the Settlement Agreement does not have an adverse impact on current employees because no employee will be displaced by a returning class member and now assert that the Agreement requires TWA to hire returning class members even though no vacancies exist. If we were to adopt the plaintiffs' argument, TWA would either have to discharge current flight attendants to make room for returning class members or pay the returning class members their salaries even though there was no work for them to perform. Such an interpretation would defeat the intent of the earlier decision of this court that returning flight attendants would be hired to fill vacancies created by "normal attrition." The plaintiffs' suggested interpretation of the Settlement Agreement is not based on sound financial policy, finds no support in the language of the Agreement itself, and ignores the economic impact this interpretation would have on TWA. Courts not only have the obligation to operate within the law, but must also continue to be aware of economic reality and show fiscal responsibility in their decisions and we will not participate in dragging TWA into financial stress. As we interpret the plain and unambiguous meaning of the Settlement Agreement, we can find absolutely no language requiring, and we decline to order TWA to pay returning flight attendants their full salaries if TWA does not have a vacancy at a flight attendant base at the particular time the returning attendants complete the retraining classes.
 
 
 17
 The district court agreed with the plaintiffs' argument that the offer of re-employment was conditioned only upon the successful completion of retraining classes and that TWA was required to offer the plaintiffs re-employment regardless of whether or not TWA currently had vacancies at any flight attendant base. This argument ignores financial reality in that such a reading of the Settlement Agreement would require TWA to pay the plaintiffs their salaries even if the plaintiffs were not serving in the air as flight attendants. There was no language in the Settlement Agreement requiring TWA to accept this "featherbedding" approach advocated by the plaintiffs.
 
 
 18
 We hold that the clear and unambiguous language of the Settlement Agreement requires TWA to offer retraining to members of the plaintiffs' class within one year from the entry of the final order and further to offer re-employment to those plaintiffs who successfully complete the retraining classes at such time as a vacancy exists at a flight attendant base, and therefore, we reverse the district court's decision granting the plaintiffs' motion to compel TWA to rehire the plaintiffs at the completion of their retraining classes without regard to whether current vacancies exist.
 
 
 19
 WEIGEL, Senior District Judge, dissenting.
 
 
 20
 I respectfully dissent. I agree that the contract requires satisfactory completion of retraining as a condition precedent to the right to reemployment. But I do not agree (as the majority of the panel does) that the contract is unambiguous in limiting the obligation to rehire to "such time as a vacancy exists at a flight attendant base". Nor do I agree (as the District Court concluded) that the contract is unambiguous in requiring rehiring "no later than the end of the last retraining class".
 
 
 21
 I deem the contract so ambiguous and imprecise in designating the time when those eligible must be rehired as to call for extrinsic evidence to aid in resolving the question. See DeGraff v. Kaplan, 109 Ill.App.3d 711, 65 Ill.Dec. 75, 440 N.E.2d 930, 933 (1982); and Pioneer Trust and Savings Bank v. Lucky Stores, Inc., 91 Ill.App.3d 573, 47 Ill.Dec. 36, 414 N.E.2d 1152, 1154 (1980).
 
 
 22
 Accordingly, I would remand to the trial court for its prompt consideration of such extrinsic evidence. But if it be concluded that the law does not require the taking of such evidence, I would affirm for the reasons stated by the District Court in the order entered October 5, 1982. That is to say this: Absent extrinsic evidence clarifying the time for rehiring, I deem the basic purpose of the contract to call for rehiring consistently with the order of the District Court and would, therefore, affirm.
 
 
 
 *
 The Honorable Stanley A. Weigel, Senior District Judge of the Northern District of California, is sitting by designation
 
 
 [1]
 For an in-depth examination of the procedural history of the instant case see Air Line Stewards, etc. v. Trans World Airlines, Inc., 630 F.2d 1164, 1165-66 (7th Cir.1980)
 
 
 [2]
 The dissent takes the position that the contract is ambiguous with regard to "when those eligible must be rehired," and therefore calls for a remand to consider extrinsic evidence in an attempt to resolve this question. Since we hold the contract is unambiguous the principle of contract construction favoring the reliability of written instruments warrants the exclusion of any such extrinsic evidence. As we recently stated in Binks Manufacturing Co. v. National Presto Industries, Inc., 709 F.2d 1109 (7th Cir.1983):
 "The policy of upholding the integrity of written contracts and favoring written terms over extrinsic evidence is particularly relevant in cases of this nature involving a written contract between two large corporations presumably represented by competent counsel."
 Id. at 1116. Although Binks involved the interpretation of Ill.Rev.Stat. ch. 26, § 2-202 (UCC § 2-202) concerning extrinsic evidence, the general policy of "upholding the integrity of written contracts" appears to apply equally as well to the present agreement between a labor association and a corporation which were both represented by competent counsel. That policy mitigates against a remand for a consideration of extrinsic evidence as it mitigated against the consideration of such evidence in Binks.