Donald **TERRY**, et al., Plaintiffs,

v.

**ATLAS VAN LINES, INC.,** et al., **Defendants.**

**WESRAY SERVICES, INC., Defendant/Counter–Plaintiff Third–Party Plaintiff,**

v.

**TRANSWORLD VAN LINES, INC., Third–Party Defendant.**

No. 85 C 8121.

United States District Court, N.D. Illinois, E.D.

June 20, 1986.

Robert Briskman, Goldstein, Simon, Briskman, Briskman, Trinley & Lamb, Chicago, Ill., for plaintiffs.

Thomas Trinley, Robert Briskman, Goldstein, Simon, Briskman, Briskman, Trinley & Lamb, Chicago, Ill., Jack Pearce, Washington, D.C., for third-party defendant.

Theodore R. Tetzlaff, Don R. Sampen, Randall F. Kender, Jenner & Block, Chicago, Ill., for Atlas Van Lines.

## MEMORANDUM OPINION AND ORDER

DECKER, District Judge.

Plaintiffs, Rothery Storage & Van Co., Inc., (Rothery), a local Illinois household goods moving and storage company, and Donald Terry (Terry), Rothery's president, brought this action against Atlas Van Lines, Inc. (Atlas), a nationwide common carrier of household goods, and its majority shareholder, Wesray Services, Inc. (Wesray). The dispute centers upon Atlas's ter-

mination of its agency relationship with Rothery.

Plaintiffs filed a four count complaint. Count I is brought under 42 U.S.C. §§ 1985(2) and 1986. Therein, plaintiffs claim Atlas, Wesray, the members of Atlas's board of directors and other Atlas employees conspired to terminate Rothery's agency in retaliation for Rothery's participation in an antitrust suit against Atlas. The remainder of the complaint is brought only against Atlas. Count II alleges a claim for breach of contract. Count III claims the termination constituted tortious interference with Atlas's contractual or business relations and with its prospective economic advantage. Finally, Count IV seeks redress for the alleged wrongful termination under the Illinois Franchise Disclosure Act, Ill.Rev.Stat. ch. 121½, § 701 et seq.

In response to the complaint, Atlas brought a counterclaim against the plaintiffs and a third party complaint against a Rothery subsidiary, Transworld Van Lines, Inc. (Transworld). In Count I thereof, the defendants allege that Rothery and Terry breached the agency agreement. Count II alleges a breach of fiduciary duty by Rothery and Terry. Count III claims Transworld tortiously interfered with the Atlas/Rothery agency relationship.

The case is before the court on cross motions to dismiss for failure to state a claim.[1]

### I. *Factual Background*[2]

Atlas is a nationwide interstate common carrier of household goods. The Atlas van line system operates through a nationwide network of approximately 500 independently owned agents.

A standardized agency agreement supplemented by a set of operating by-laws and rules and regulations provide the terms of this agency. Rothery and Atlas

---

1. Plaintiffs moved for oral argument of these motions. After reviewing the briefs, the court concludes that no such argument is necessary.

2. The statement of facts relates uncontested facts or, where dispute exists, presents the facts in a neutral fashion.

entered into such an agreement in 1967.[3] Exhibit B to Plaintiffs' Motion to Transfer. By Paragraph 3 thereof, Rothery reserved the right to operate as a "carrier agent." That is, Rothery could operate under a dual status as an independent company and as an Atlas agent. It could thus apportion work so as to maximize its profit.

In 1979, the federal government began deregulating the moving industry. In part, this deregulation spawned increasing numbers of carrier agents and allowed those agents to expand the scope of their independent moving operations nationwide. In February of 1982, in response to this development, Atlas promulgated a new carrier agent policy. This policy prohibited the operation of independent interstate carriers by Atlas agents. Nevertheless, carrier agents could remain Atlas agents by placing their independent moving authorities in "carrier affiliates," organized and operated by separate companies, with separate trade names dissimilar from those of the Atlas agents.

Rothery and other Atlas agents objected to the new policy and investigated whether the new policy violated provisions of the Interstate Commerce Act and the federal anti-trust laws. On May 19, 1982, a meeting was held to discuss the new policy among Atlas's management and board of directors and representatives of various Atlas agents including Rothery. Plaintiffs allege that O.H. Frisbee, Chairman of Atlas's board of directors, expressed dismay over attacks on the new policy's legality and indicated Atlas would take responsive action. Shortly thereafter, Rothery received a letter from Edward Bland, then President of Atlas, again outlining the company's position with regard to possible litigation brought by Atlas agents over the new policy. Atlas "renewe[d] the right [to] counterclaim against every plaintiff," and indicated that "there may be circumstances under which Atlas [would] have no alternative other than to terminate ... agent[s]." Complaint at ¶ 28.

Rothery and other Atlas agents were undeterred. On February 17, 1983, they brought an anti-trust action against Atlas in the United States District Court for the District of Columbia. Terry testified at a preliminary injunction hearing and upon deposition.[4]

On July 12, 1983, Atlas filed a trademark action against Rothery and Transworld. On January 31, 1985, Michael Scavuzzo, Atlas's Vice President for Agency Services and Development, sent Rothery a notice of termination. On May 11, 1985, Thomas Fazan, Atlas's Chairman and Chief Executive Officer informed Rothery by letter that continuation of the agency agreement was contingent upon Rothery's execution of a new agency contract. This was never accomplished, and on July 2, 1985, Fazan sent Terry a letter of final termination, effective September 30, 1985.

## II. *Defendants' Motion to Dismiss* [5]
### A. Count I

■ Count I alleges that former and current Atlas officials and Atlas directors conspired to threaten and intimidate Rothery to prevent its appearance and testimony in the antitrust litigation in violation of 42 U.S.C. §§ 1985(2), and 1986. The defendants attack Count I on numerous grounds. The court need only address their contention that plaintiffs' conspiracy allegation is fatally flawed. Defendants cite the holding of *Dombrowski v. Dowl-*

---

**3.** Atlas and Rothery first entered into a written agency agreement in 1954. The 1967 agreement, which is relevant here, updated this prior agreement.

**4.** Atlas has been granted summary judgment in the antitrust proceeding. *Rothery Storage & Van Co. v. Atlas Van Lines, Inc.,* 597 F.Supp. 217 (D.D.C.1984). That decision is currently on appeal.

**5.** Dismissal for failure to state a claim is proper only if "it appears beyond doubt that the plain-

tiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must take all the complaint's well-pleaded allegations as true and view them, together with all reasonable inferences to be drawn therefrom, in the light most favorable to the plaintiffs. *Powe v. City of Chicago,* 664 F.2d 639, 642 (7th Cir. 1981). This standard applies to both motions.

*ing,* 459 F.2d 190, 196 (7th Cir.1972), for the proposition that:

> [conspiracy is not shown] by proof that a discriminatory business decision reflects the collective judgment of two or more executives of the same firm ... if the challenged conduct is essentially a single act of discrimination by a single business entity, the fact that two or more agents participated in the decision or in the act itself will normally not constitute the conspiracy contemplated by [§ 1985(3) ].

Plaintiffs, seeking to avoid *Dombrowski,* point to the fact that John Westerberg and Jack Jepson, two Atlas board members, also head up two Atlas agents which compete with Rothery. This fact alone, however, does not take this case outside *Dombrowski.* As long as the board members act in accordance with their responsibility to advance the interests of the corporation, they cannot be held liable for conspiring with their principal. Defendants have alleged no facts suggesting Atlas's promulgation of the new carrier agent policy, attempts to head off litigation over that policy and termination of Rothery, were outside the scope of the alleged co-conspirators' responsibility and authority. More importantly, the complaint is devoid of factual allegations suggesting these actions were taken to benefit the Westerberg and Jepsen companies at the expense of Atlas's interests. *See accord Girard v. 94th Street & Fifth Avenue Corp.,* 530 F.2d 66, 71 (2d Cir.1976), *cert. denied* 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 798 (1976) (affirming summary judgment in favor of a corporation and its board of directors as to the plaintiff's § 1985(3) conspiracy claim where "plaintiff did not allege that any of the individual defendants acted in any other capacity than his official role as director"); *Bianco v. American Broadcasting Co., Inc.,* 470 F.Supp. 182, 184 (N.D.Ill. 1979) (dismissing allegations of intracorporate conspiracy where the plaintiff challenged a specific corporate policy initiated by an employee in the scope of his employment). Plaintiffs have failed to sufficiently allege the requisite conspiracy under § 1985(2). The lack of such a pleading is also fatal to plaintiffs' claim under § 1986. *See Bell v. City of Milwaukee,* 746 F.2d 1205, 1233 (7th Cir.1984). Thus, Count I is dismissed in its entirety.[6]

### B. Count II

At issue in the contract claim is the propriety of the agency agreement's termination. The parties differ in their interpretations of the agency agreement's termination provisions. Plaintiffs argue the agreement was automatically renewed from year to year, and was terminable during each annual term only for non-compliance with Atlas's rules and regulations. They contend the termination occurred during the annual term, without just cause, and therefore, was improper. Atlas argues the agreement was terminable at will and was thus properly terminated.

■ As a general rule, the construction of a contract is a matter to be determined by the court as a question of law. *Lenzi v. Morkin,* 103 Ill.2d 290, 293, 82 Ill.Dec. 644, 645, 469 N.E.2d 178, 179 (1984).[7] The contract language must be construed literally in a straightforward manner, giving full force and effect to each provision. *See Air Line Stewards and Stewardesses Association, Local 550 v. Trans World Airlines, Inc.,* 713 F.2d 319, 321–322 (7th Cir.1983).

The relevant language is found in subparagraphs A and B of Paragraph 11, which provide:

> (a) This agreement shall become effective upon execution by the duly authorized officer of Atlas and shall remain in full force and effect for a period of one year from date of execution, unless ter-

---

**6.** Inasmuch as Count I is plaintiffs' only claim against Wesray, its dismissal eliminates Wesray as a defendant in this suit.

**7.** Apparently, the parties agree that Illinois law governs the contract claim, even though the agency agreement expressly provides that Indiana law is to govern its terms. When the parties fail to raise the choice of law issue, the court applies the law of the forum state. *National Association of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corp.,* 779 F.2d 1281, 1285 (7th Cir.1985).

minated for noncompliance with any of the terms as provided herein or in accordance with the Atlas Rules and Regulations as they may now be in effect or may be amended hereafter.

(b) This agreement shall be automatically renewed from year to year unless the Agent or Atlas shall terminate it by formal written notice sent by registered mail, which shall become effective upon receipt thereof.

■ Atlas points to the final clause in Paragraph 11(b), and particularly the use of the word "unless," to support its contention that the agreement was terminable at will. It argues the provision for annual renewal applies only in the absence of a termination. The court is not convinced. This interpretation renders meaningless the provision for a one year renewal, for it allows termination at any time. The court cannot accept an interpretation in which two clauses in the same sentence conflict, especially in the face of a more reasonable construction which avoids this result.

Under Paragraph 11(a), the agreement was effective for one year, unless terminated for cause, i.e. non-compliance with Atlas's rules and regulations. Under Paragraph 11(b), at the end of the first year, and each succeeding year, the agreement was automatically renewed for an additional year, unless either party exercised its right of termination. The only condition of this termination was the provision of written notice. Thus, Paragraph 11(a) provides for termination for cause during each annual term,[8] and paragraph 11(b) provides for termination without cause at the end of each annual period.[9]

■ Atlas terminated the agreement as of September 30, 1985. This termination, prior to the completion of the annual term,

was effected pursuant to Paragraph 11(a), and required due cause. Whether such cause can be shown is a question of fact not amenable to disposition at this time.

For the foregoing reasons, the court holds that, as a matter of law, plaintiffs have stated a viable contract claim.

## C. Count III

Plaintiffs allege that, as a result of the termination, Rothery was denied certain benefits of its agency status. These benefits include access to the nationwide network of Atlas agents with whom Rothery could coordinate its shipments, and the marketing of its services as part of this nationwide network. Plaintiffs claim the loss of these benefits due to the alleged contract breach constitutes tortious interference with its current and prospective business relationships and its prospective economic advantage.

Atlas's attack on this claim rests solely upon its contention that the termination was proper. It argues the consequences of a justifiable termination cannot be actionable in tort. Inasmuch as plaintiffs' contract claim remains viable, the premise of Atlas's argument crumbles, rendering impotent its attack on Count III.

## D. Count IV

■ Plaintiffs allege the termination of Rothery by Atlas violated the Illinois Franchise Disclosure Act (IFDA), Ill.Rev.Stat. ch. 121½, ¶ 701 *et seq.* Section 704.3 thereof provides that termination of a franchise before its expiration must be founded upon good cause. In effect, this section supplies each franchise agreement with a termination provision. Plaintiffs, of course, allege the termination was effected without good cause.

---

**8.** While Paragraph 11(a), on its face, applies only to the first year, it is reasonable to infer the parties' intention that it govern their performance in subsequent years. It would be anomolous indeed, if Atlas was able to terminate the agreement for cause during its first year, but not in later years. Furthermore, this interpretation does little more than provide Atlas with a common law remedy for breach of contract.

**9.** This interpretation accords with Rule 25 of Atlas's Rules and Regulations, which provides a review process of terminations for cause. Atlas points to language in the rule which states that, "[The review process provided in Rule 25] shall not limit in anyway [Atlas's] right to terminate any agency at will and/or without cause where provided." This merely refers to the fact that, at the end of each annual term, the agreement may be terminated without cause.

Atlas musters numerous attacks on this claim. First, it argues the IFDA is preempted by the Interstate Commerce Act (ICA), 49 U.S.C. § 10101 *et seq.* Atlas points to the fact that the Interstate Commerce Commission (ICC) approved of the acquisition of a majority of its stock by Wesray in 1984, and cites Section 11341 of the ICA, which provides in relevant part:

A carrier, corporation, or person participating in [an] approved or exempted transaction is exempt from the antitrust laws and from all other law, including State and municipal law, as necessary to let that person carry out the transaction, hold, maintain, and operate property, and exercise control or franchises through the transaction.

Atlas argues it is exempt from the dictates of the IFDA because the IFDA improperly hinders its exercise of the Rothery franchise.

At first blush, the language granting this exemption is quite broad. There is, however, an important limitation. The exemption applies only *as necessary* to allow the franchise's operation. The question, then, is whether a right of termination without cause is necessary to Atlas's operation of the Rothery franchise. Neither party has cited authority supporting its position on this issue. Nor has the court found any case on point. Nevertheless, this question is not problematic because the IFDA is in harmony with the parties' agreement. The court has already determined that, during each annual term, the agreement was terminable for cause. This is all the IFDA requires. Thus, the IFDA only secures plaintiff a statutory remedy in addition to that provided by the common law of contracts. It cannot be that a right of termination without cause during each term was necessary to Atlas's operation of the franchise, since it did not secure that right in the franchise agreement.

■ Next, Atlas argues this claim should be dismissed because it requires retroactive application of the IFDA. Atlas points to the fact that the agreement was originally executed in 1967 while the IFDA became effective in 1974. Atlas, however, ignores the fact that the agreement expired and was renewed annually. Thus, each year a new agreement came into existence. *See Reinders Brothers v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 49 (7th Cir.1980).

This is not merely a semantic distinction. The annual expiration provided Atlas with substantial benefits. It could terminate the agreement annually for any reason, and with little notice. Rothery was not guaranteed a contract for each successive year. Moreover, the agreement's terms could be varied each year. Indeed, the complaint, liberally construed as it must be, alleges a significant alteration of the agreement with the promulgation of the carrier agent policy in 1982. For example, Rothery was forced to breathe life into Transworld, a dormant subsidiary, in order to comply with the new policy. Thus, the IFDA was in place prior to the effective date of the contract in issue and therefore, its application thereto is not retroactive.

Atlas's other contentions do not merit extended discussion. It argues the events in issue are exempted from the IFDA's coverage by Section 717(2) thereof. Section 717(2) exempts certain franchise renewals and extensions from the provisions of Section 704. At issue here, though, is a franchise termination, not an extension or renewal. Finally, Atlas's contention that it terminated the agreement for good cause involves questions of fact not amenable to disposition on a motion to dismiss.

For the foregoing reasons, plaintiffs' claim under the IFDA remains intact.

### III. *Counterdefendants' Motion to Dismiss* [10]

■ The gravamen of Atlas's counterclaim is that the counterdefendants, using Rothery's agency status and the benefits derivative therefrom, improperly diverted business to Transworld. In particular, Atlas claims the counterdefendants improperly used the Atlas "infrastructure" to promote the services of Transworld. Counterclaim at ¶ 11.

---

10. *See* n. 5, *supra.*

The counterdefendants point to language in the agency agreement, carrier agent policy, and operating by-laws which allow Rothery's development of Transworld as a carrier affiliate. Atlas points to language limiting the allowable interplay between Rothery and Transworld. In effect, by Atlas's reading of the agreements, Rothery was required to build a Chinese wall between itself and Transworld. A decision as to whether Rothery's business dealings with Transworld were proper under the relevant agreements involves questions of fact not amenable to disposition at this time.

What remains, then, is the counterdefendants' contention that the allegation, upon which the counterclaim is founded, concerning improper use of the Atlas infrastructure, is so vague as to warrant dismissal.[11]

Under the liberal notice pleading rules of this court, the counterclaim need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief ..." Fed.R.Civ.P. 8(a)(2). The court is sympathetic to the counterdefendants' difficulty in ascertaining what is meant by the Atlas infrastructure. Nevertheless, reading the counterclaim as a whole and in light of the agency agreement and the carrier agent policy, the court finds sufficient factual basis for the counterclaim and third party complaint. In a nutshell, Atlas claims that, in developing Transworld, Rothery and Terry made improper use of the benefits and advantages appurtenant to Rothery's position as an Atlas agent. At this stage, this is sufficient. The factual underpinnings of Atlas's claim will be further illuminated in discovery. Accordingly, the motion to dismiss the counterclaim and third party complaint is denied.[12]

### IV. *Conclusion*

Defendants' motion to dismiss is granted with respect to Count I of the complaint.

Counterdefendants' motion to dismiss the counterclaim and third party complaint is denied.

---

11. This complaint is more appropriately presented in a motion for more definite statement under Fed.R.Civ.P. 12(e).

12. The court questions whether Terry, individually, is a proper defendant to Count I of the counterclaim, inasmuch as he is not a party to the agency agreement. Terry has not raised this issue, however, and the court will not decide it *sua sponte.*