MITCHELL BUICK & OLDSMOBILE SALES, INC., Plaintiff-Appellee, v. NATIONAL DEALER SERVICES, INC., Defendant-Appellant.

Second District   No. 2—84—0970

Opinion filed November 20, 1985.

Jerald M. Mangan, of Fraterrigo, Best & Beranek, of Wheaton, for appellant.

Michael F. Kukla, of Cowlin, Ungvarsky, Kukla & Curran, of Crystal Lake, for appellee.

JUSTICE HOPF delivered the opinion of the court:

This appeal arises out of an action for declaratory judgment brought pursuant to section 57.1 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 57.1, now codified at Ill. Rev. Stat. 1981, ch. 110, par. 2—701). This action was brought by the plaintiff, Mitchell Buick & Oldsmobile Sales, Inc., against National Dealer Services, Inc. (National Dealer), concerning an insurance coverage for certain bad check losses sustained by the plaintiff. Following a bench trial in the circuit court of McHenry County, the court found the losses covered under the false pretense provision of the defendant's policy, and judgment was entered in favor of the plaintiff in the amount of $12,331.

The defendant now raises the following contentions before this court: (1) that plaintiff failed to establish a *prima facie* case of deceptive practices necessary to support a false pretense claim under the policy; (2) that plaintiff's failure to comply with the notice requirement under the policy defeated its claim for coverage; (3) that plaintiff's alleged losses fell within the specific policy exclusion justifying a denial of coverage under the policy; and (4) that plaintiff's failure to reply to defendant's affirmative defenses operated to admit the truth of the matter as alleged.

The policy in question was issued by defendant-company, National Dealer, to plaintiff, a car dealership, in January 1978. It was sold to the plaintiff through its primary owner, John A. Mitchell, by Mr. Kluever, an insurance broker for Key Insurance Agency. Mitchell testified that at the time he bought the policy he believed Kluever was also an agent for the defendant, National Dealer. The notice provision of that policy reads as follows:

"In the event of LOSS the INSURED shall:

(a) protect the COVERED AUTOMOBILE, whether or not this insurance applies to the LOSS, and any further LOSS or damage due to the INSURED'S failure to protect shall not be recoverable under this insurance; reasonable expenses incurred in affording such protection shall be deemed incurred at the Company's request;

(b) give notice thereof as soon as practicable to the Com-

pany or any of its authorized agents and also, in the event of theft or larceny, to the police;

(c) File with the Company, within 60 days after LOSS, his sworn proof of LOSS in such form and including such information as the Company may reasonably require and, upon the Company's request, shall exhibit the damaged property and submit the examination under oath *** ."

Under the coverage portion the policy provided in relevant part:

"1. The Company will pay for LOSS to COVERED AUTOMOBILES under:

* * *

COVERAGE F — FALSE PRETENSE (BROAD FORM TRICK and DEVICE):

(1) caused by theft or larceny and arising out of the INSURED's voluntarily parting with evidence of TITLE to or possession of a COVERED AUTOMOBILE, if induced to do so by any criminal scheme, trick, device, or false pretense; *** ."

However, under the exclusion portion, the policy also read:

"This insurance does not apply:

(w) under coverage F, to any LOSS when credit (including the post-dating of checks) has been extended toward the purchase price of the COVERED AUTOMOBILE unless induced so to do by any criminal scheme, criminal trick, criminal device, or criminal false pretense;

* * *

(y) under coverage F, unless the INSURED shall as soon as practicable after LOSS, obtain a warrant for the arrest of the person or persons procuring evidence of TITLE to or possession of such COVERED AUTOMOBILE *** ."

On August 31, 1978, plaintiff sold four used vehicles to C. F. Payne Motors (Payne) for $14,800. Payne, a one-man used car operation headquartered in Boaz, Alabama, had done business with plaintiff's company for over 25 years. As was their customary practice, Payne paid for each automobile by check and in exchange received a title and possession from plaintiff. All four of Payne's checks were returned for insufficient funds. Subsequently, Mitchell contacted Payne to discuss this matter. Payne told him he was having a bit of problems but that he would deliver certified funds to cover the checks in a few weeks. In the meantime Mitchell had accepted several other checks on vehicles sold to Payne during the first two weeks of September. All of these checks were also returned for lack

of sufficient funds.

When another check was returned for insufficient funds Mitchell called Payne and Payne explained that he was having some problem with his bank honoring some drafts but he assured Mitchell that everything would be cleared up in a week or two. Mitchell told Payne he would give him until the end of September to try to get things straightened out. In the interim, the plaintiff accepted two additional checks from Payne on two more automobiles. In total, plaintiff accepted 11 checks during the month of September, all of which were returned.

Mitchell testified that he talked to Mr. Float, a Key Insurance Agency agent, between September 20 and 25, 1978. Mitchell said that he advised Float of the problem but told Float that he thought he could handle it himself. Subsequently, plaintiff recovered $8,900 at an auction in which some of Payne's automobiles were sold. He reported this fact to Mr. Kluever at Key Insurance Company, but told Kluever he still had not gotten any money from Payne. When it was evident that Payne would not make good on his checks, Mitchell continued to consult with Kluever. According to Mitchell, Kluever told him that he had coverage for the bad checks but told Mitchell to try and collect as much as he could on his own before attempting to recover under the policy. Thereafter, Mitchell sued Payne civilly and collected $9,270 in payments, resulting in a final loss of $12, 331.

In August 1979 Mitchell received a letter from a representative of Kluever and Associates advising him that defendant, National Dealer, was aware of the loss and would be sending a man out to investigate the claim. Mitchell stated that subsequent to the letter Mr. Zinselmeyer from National Dealer came to his office and reviewed all of his transactions with Payne. National Dealer, thereafter, denied the claim, and plaintiff then brought this action for declaratory judgment seeking a ruling that plaintiff's losses were covered under the false pretense provision of the defendant's policy. Following a bench trial an order was entered on September 11, 1984, finding coverage under the policy and awarding judgment in favor of the plaintiff in the amount of $12,331. Subsequently, defendant filed this appeal. We affirm.

■■ Defendant's first contention is that plaintiff failed to establish a *prima facie* case of deceptive practices against Payne under section 17−1(B)(d) (Ill. Rev. Stat. 1979, ch. 38, par. 17−1(B)(d)), as alleged in its complaint. Specifically, defendant argues that plaintiff failed to produce sufficient evidence to show Payne had the intent to defraud at the time he issued the bad checks. Therefore, defendant

concludes that plaintiff is not entitled to coverage under the false pretense provision of the policy. Plaintiff, on the other hand, maintains that coverage was proper since Payne's intent to defraud can be inferred from the returned checks themselves.

Section 17—1(B)(d) of the Illinois Criminal Code of 1961 reads as follows:

"Sec. 17—1. Deceptive practices.

\*\*\*

(B) General Deception

A person commits a deceptive practice when, with intent to defraud:

\* \* \*

(d) With intent to obtain control over property or to pay for property, labor or services of another he issues or delivers a check or other order upon a real or fictitious depository for the payment of money, knowing that it will not be paid by the depository. Failure to have sufficient funds or credit with the depository when the check or other order is issued or delivered is prima facie evidence that the offender knows that it will not be paid by the depository, and that he has the intent to defraud; \*\*\*."

(Ill. Rev. Stat. 1979, ch. 38, par. 17—1(B)(d).)

As noted by the court in *People v. Sumner* (1982), 107 Ill. App. 3d 368, 370, 437 N.E.2d 786, the language of the deceptive practice statute clearly indicates that a deceptive practice is a specific intent crime, that a person who writes and delivers a check knowing the account is deficient or that the bank will not pay when the check is presented is guilty of deceptive practice only if the check is written with the specific intent to defraud. (See also *People v. Ogunsola* (1981), 87 Ill. 2d 216, 221, 429 N.E.2d 861.) Thus, it cannot be inferred that because payment on a check was later stopped the drawer issued it intending to defraud the payee. 87 Ill. 2d 216, 221, 429 N.E.2d 861.

In this case, we have only the testimony of James Mitchell and the evidence of returned checks themselves from which to infer an intent to defraud. As such, there is no way to prove conclusively that Payne had the requisite intent to deceive plaintiff when he wrote the checks. However, Mitchell testified that when he talked to Payne after the initial four checks were returned, Payne indicated that he was having trouble with his bank honoring drafts but assured him that everything would be cleared up within a week or 10

days. He also promised to send certified funds to Mitchell by the end of September 1978. Neither promise was carried out. Relying on these assurances and the knowledge that Payne had been a good customer for over 25 years, plaintiff was induced to accept not just one or two but a total of 11 checks from Payne in exchange for Mitchell's automobiles. We believe that this is sufficient evidence of fraud to merit coverage. In addition, it appears that this type of loss is what the false pretense provision of the policy was intended to cover, as indicated by defendant's newsletter dated February 1979. That publication reads in part:

> "National Dealer Services insures only the franchised automobile dealer and can therefore provide for him a complete insurance program. A coverage provided by NDS that is not always offered by other insurers is 'false pretense coverage'. This is a broad form coverage that protects the dealer against loss of vehicles through fraudulent acts or criminal schemes.
>
> * * *
>
> False pretense coverage is designed to protect against unforeseeable losses. Here are a few ways to prevent these losses.
>
> * * *
>
> Never release a car to a buyer who has paid by personal check until a bank has cleared the check. Don't let your eagerness to make a sale cause you grief later.
> When dealing with wholesale buyers who are not established in your area, demand payment by certified check. Never accept sight drafts.
> In spite of all precautions some losses will inevitably occur and when they do, National Dealer Services is ready to help you."

We agree with the trial court and find that plaintiff established a *prima facie* case of false pretenses sufficient to warrant coverage under the insurance policy.

■ The defendant's second contention is that plaintiff is not entitled to coverage, because in not giving timely notice directly to National Dealer, plaintiff failed to comply with a provision of the policy requiring that the defendant or "one of its authorized agents" be given notice of a loss "as soon as practicable." Defendant asserts that plaintiff's notice to Key Insurance Agency (later known as Kluever and Associates) was insufficient since Kluever, a broker, was not an agent of the defendant. Defendant further contends that it

never received notice of the claim. Plaintiff responds that it believed Kluever was defendant's agent and that after the loss it promptly contacted Kluever at Key Insurance since Kluever had sold the policy to plaintiff and plaintiff was accustomed to dealing with Kluever regarding questions on its insurance.

The purpose of the notice requirement is to enable the insurer to make a timely and thorough investigation of an insured's claim. (*Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 319 N.E.2d 25; *INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 83, 379 N.E.2d 34.) Such a provision is not to be considered as a technical requirement merely for the convenience of the insurer, but rather is a valid prerequisite for coverage (*INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 83, 379 N.E.2d 34; *International Harvester Co. v. Continental Casualty Co.* (1962), 33 Ill. App. 2d 467, 471, 179 N.E.2d 833.) Generally, the time within which notice is required is determined by a standard of reasonableness based upon the facts and circumstances of a particular case. (*Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 319 N.E.2d 25; *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 898, 403 N.E.2d 508.) While an absence of actual prejudice to the insurer may be a factor to be considered in determining the propriety of the notice and the diligence of the insured it does not conclusively establish the timeliness of the notice. (*INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 379 N.E.2d 34; *Charter Oak Fire Insurance Co. v. Snyder* (1974), 22 Ill. App. 3d 350, 317 N.E.2d 307.) Thus, where there is late notice, the issue is not whether the insured had been prejudiced but rather whether reasonable notice has been given. *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 403 N.E.2d 508; *INA Insurance Co. v. City of Chicago* (1978), 62 Ill. App. 3d 80, 379 N.E.2d 34.

In the present case, Mitchell testified that he believed Kluever of Key Insurance to be an agent of defendant for the purposes of servicing this policy. While he also acknowledged that Kluever's agency acted as a broker, he stated that Kluever sold him the policy and, therefore, he assumed that he should report any problems or losses to Kluever rather than writing directly to the defendant company. He testified that he notified Kluever's office of his losses within a week after receiving the first series of bad checks, and was in continuous communication with Kluever about the matter. Contrary to defendant's assertion, a claims adjustor for National Dealer was as-

signed to the case during the summer of 1979 and did eventually investigate the claim as indicated by a letter from Kluever to plaintiff and by Mitchell's testimony.

It is fundamental that notice to, or knowledge of an agent, while acting within the scope of his authority and with respect to a matter over which his authority extends, is notice to a principal. (*Van Hulle v. State Farm Mutual Automobile Insurance Co.* (1969), 44 Ill. 2d 227, 254 N.E.2d 457.) It is also well settled that an agency relationship may be implied from the facts of a particular case and need not be expressed. (*Securities Fund Services, Inc. v. American National Bank & Trust Co.* (N.D. Ill. 1982), 542 F. Supp. 323.) In addition, an "apparent agent" is a person who, whether authorized or not, reasonably appears to third persons because of the acts of another, to be authorized to act as the agent for such other persons. *Alterman v. Lydick* (7th Cir. 1957), 241 F.2d 50.

The party alleging an agency relationship has the burden of proving it by a preponderance of the evidence. (*Lazarus v. Pascucci* (1979), 74 Ill. App. 3d 633, 393 N.E.2d 1074; *Farrell v. Lincoln National Bank* (1974), 24 Ill. App. 3d 142, 320 N.E.2d 208.) Further, it is generally recognized that a broker acts as an agent of the insured rather than an agent of the insurance carrier. (Ill. Rev. Stat. 1981, ch. 73, par. 1065.37; *Lynn v. Village of West City* (1976), 36 Ill. App 3d 561, 564, 345 N.E.2d 172; see also *Ledbetter v. Crudup* (1983), 114 Ill. App. 3d 401, 403-04, 449 N.E.2d 265, where the court held that absent evidence of a course of dealing or customary practice, a broker is not an agent of an insurance company for receipt of notice of a suit.) However, the court in *State Security Insurance Co. v. Goodman* (1972), 6 Ill. App. 3d 1008, 1010-11, 286 N.E.2d 374, did find that an insurance broker was an "authorized agent" for purposes of notice of claim, on the basis that the broker was listed on the policy as "Representative" and under the rule applicable to construction of the language in certain insurance policies, that any ambiguities be construed against an insurer and in favor of the insured. (See *Lentin v. Continental Assurance Co.* (1952), 412 Ill. 158, 163, 105 N.E.2d 735.) The court noted:

> "The plaintiff's contention that the Ashby Agency was not a licensed agent, but was a broker, and as a broker the agency's authority with respect to the insuror was limited, does not escape our notice. The authority on this point, however, relates to the ability of the broker to bind coverage and to otherwise act on behalf of the company within the realm of the broker's actual authority. The particular matter of this broker's author-

ity is concerned with apparent authority rather than actual authority. It seems to us that, by naming this broker as 'representative' in the body of the policy, when the words 'authorized agent' are used they are not to be considered in any legal or technical sense, but rather in their ordinary sense. This is an ancient rule which is still in current use. (See Illinois Law and Practice, Contracts, Section 218.) Therefore, it appears that the broker in this particular instance would be an authorized agent insofar as notice is concerned." *State Security Assurance Co. v. Goodman* (1972), 6 Ill. App. 3d 1008, 1011-12, 286 N.E.2d 374.

In the instant case, the copy of the "Dealer-Pak" insurance policy issued to plaintiff and included in the record has several signature lines labeled "Authorized Representative." However, they are all blank. Also, there appears to be no other indication as to who to contact, *i.e.*, who qualified as an authorized agent, for the purpose of filing a claim.

■ Under the circumstances, we believe it was reasonable for plaintiff to assume Kluever's agency was the "Authorized Representative" for defendant. Moreover, it has been consistently held that policies of insurance are to be liberally construed in favor of the insured and where there is any ambiguity in the policy, all provisions, conditions or exceptions which in any way tend to limit or defeat liability are to be construed most favorably to the insured. (*National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 424 N.E.2d 1166; *Sally Chain Stores, Inc. v. Ace Bonded Carriers, Inc.* (1940), 307 Ill. App. 644, 30 N.E.2d 966.) We deem "Authorized Representative" to be an ambiguous term and, therefore, should be interpreted in favor of coverage. Consequently, notice to Kluever was notice to defendant, and plaintiff therefore gave timely notice of its claim under the policy.

■ The defendant next contends that even assuming plaintiff's claim qualified as false pretense and notice was proper, it was precluded from coverage by exclusion "w" and "y" of the policy. Under exclusion "w", coverage for false pretense does not apply when credit (including the post-dating of checks) has been extended towards the purchase price of an automobile unless such credit has been induced by any criminal scheme, trick, device or false pretense. Defendant argues that because John Mitchell voluntarily let Payne have until the end of September to straighten out the account and make good on his returned checks he was, in effect, extending credit to Payne.

Nonetheless, what occurred after the actual issuance of the bad checks to plaintiff is irrelevant to a determination of whether there was coverage under the false pretense provision of the policy. False pretense is to be construed as an intent to defraud *at the time of making, drawing or delivering the check*, while simultaneously obtaining something of value from another with knowledge that at the time there was insufficient funds with the bank or other depository, for payment of the check or draft in full. (*People v. Cundiff* (1973), 16 Ill. App. 3d 267, 269, 305 N.E.2d 735.) Thus, it is only where the parties agree *at the time the check is issued* that a check will not be presented until a later date (for example, because of a temporary lack of funds), is the transaction deemed essentially an extension of credit to the drawer. (35 C.J.S. *False Pretenses* sec. 21b(2), at 834 (1960); *People v. Cundiff* (1973), 16 Ill. App. 3d 267, 269, 305 N.E.2d 335.) In such a case, an offense of false pretense is not committed, since fraudulent intent is lacking at the exchange of consideration. 16 Ill. App. 3d 267, 305 N.E.2d 335.

■ Here, Payne tendered the initial four checks simultaneously with taking title and possession of four of the plaintiff's automobiles. Plaintiff was induced to believe that the check would be paid upon presentment, and the custody of the vehicles was given in reliance upon the checks, not upon the personal credit of Payne. This was also true on each of the seven other sales transactions in September, where plaintiff took defendant's check and relinquished title to the vehicles in reliance that the checks would clear immediately. There never was an agreement between the parties at the time Payne issued his checks to hold the drafts for presentment at a later date. We find that since there was no credit extended at the time of sale exclusion "w" would not apply.

We also are of the opinion that the exclusion provided for in "y" does not apply. Exclusion "y" provides that as soon as practicable the insured shall obtain a warrant for the arrest of the person or persons procuring evidence of title to or possession of such covered automobile. Mitchell never went to the police nor did he institute criminal proceedings through the State's Attorney's office. Plaintiff maintains that such an act would have been useless as Payne had not been seen since September of 1978.

■ We believe the term "obtain an arrest warrant" to be an ambiguous term. In particular the word "obtain" is susceptible to different constructions. (*DeGraff v. Kaplan* (1982), 109 Ill. App. 3d 711, 714, 440 N.E.2d 930; *B & C Electric, Inc. v. Pullman Bank & Trust Co.* (1981), 96 Ill. App. 3d 321, 329, 421 N.E.2d 206; *Bulley &*

*Andrews, Inc. v. Symons Corp.* (1975), 25 Ill. App. 3d 696, 700, 323 N.E.2d 806.) It is held that in the case of insurance policies any ambiguity is to be construed most favorably in favor of the insured. (*Lentin v. Continental Assurance Co.* (1952), 412 Ill. 158, 163, 105 N.E.2d 735.) Where there is such ambiguity in the policy, all provisions, conditions or exceptions which in any way tend to limit liability are to be construed most favorably towards the assured. *National Discount Shoes, Inc. v. Royal Globe Insurance Co.* (1981), 99 Ill. App. 3d 54, 424 N.E.2d 1166.

■■ We are of the opinion that the exclusion that the insured "obtain an arrest warrant" is unenforceable. A warrant shall be issued upon a complaint being presented to a court for the person being complained of, if it appears from the contents of the complaint and the examination of the complainant and other witnesses that the person against whom the complaint was made in fact committed an offense. (Ill. Rev. Stat. 1977, ch. 38, par. 107—9(a)(c).) An arrest warrant commands that the person against whom the complaint was made be arrested and brought before the court issuing the warrant. (Ill. Rev. Stat. 1977, ch. 38, par. 107—9(d)(6).) It shall be directed toward all peace officers of the State and shall be executed by him or by a person named specially therein. Ill. Rev. Stat. 1977, ch. 38, par. 107—9(e).

The issuance of an arrest warrant is purely a judicial function. Consequently, the insured would be powerless to obtain a warrant except insofar as a judicial officer deemed it necessary in the exercise of its duty. Further, upon the exercise of this authority, the warrant is directed toward a peace officer or a specially named person to execute. Consequently, the insured would not "obtain" an arrest warrant. As the issuance of an arrest warrant is a judicial act, this renders performance of provision "y" subject to his judicial discretion, and it can easily be seen under certain circumstances compliance with that provision would be rendered impossible. We therefore are of the opinion that provision "y" is unenforceable.

■■ Defendant's last contention is that plaintiff's failure to reply to its affirmative defenses filed with its answer to the complaint on February 1, 1982, served to admit the truth of the matters alleged therein, namely, that the claim failed to qualify as false pretense, that it fell within certain exclusions of the policy, and a number of general conditions in the contract were not met. Plaintiff responds that it was not required to answer such defenses since they were merely legal conclusions and therefore required no response.

Under sections 32 and 40(2) of the Illinois Civil Practice Act (Ill.

Rev. Stat. 1981, ch. 110, pars. 32, 40(2), now codified as Ill. Rev. Stat. 1981, ch. 110, pars. 2—602, 2—610), a reply to a defendant's answer is mandatory where a new matter by way of a defense is pleaded. If a plaintiff fails to so reply, his failure constitutes an admission as to the proof of the new matter alleged. (*In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 1028, 402 N.E.2d 348; *First Federal Savings & Loan Association v. American National Bank* (1968), 100 Ill. App. 2d 460, 467, 241 N.E.2d 615.) However, such a failure to reply merely amounts to an admission of truth of new factual matter and does not amount to an admission that such new matter constitutes a valid legal defense. *In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 402 N.E.2d 348.

In addition, where an appellant introduces evidence in support of his allegations and proceeds to litigate the case as though his adversary's responsive pleadings had been properly filed, and the issues created by his answers are fully litigated, he waives any advantage he may have gained as a result of the other party's failure to plead. *In re Marriage of Sreenan* (1980), 81 Ill. App. 3d 1025, 402 N.E.2d 348; *First Federal Savings & Loan Association v. American National Bank* (1968), 100 Ill. App. 2d 460, 467-68, 241 N.E.2d 615.

In this case the defendant's affirmative allegations were not related to factual matters but rather consisted of assertions as to how the provisions of the contract precluded recovery. As such, plaintiff's failure to reply was not an admission of their truth. (See *In re Marriage of Sreenen* (1980), 81 Ill. App. 3d 1025, 1028, 402 N.E.2d 348.) Moreover, defense counsel failed to raise this issue before or during trial, and in addition, presented evidence through cross-examination, as to each of the allegations contained in its affirmative pleading. See *First Federal Savings & Loan Association v. American National Bank* (1968), 100 Ill. App. 2d 460, 467-68, 241 N.E.2d 615.

We, therefore, conclude that the defendant cannot now rely on the fact that the plaintiff failed to file a responsive pleading to its affirmative defenses.

We affirm the ruling of the circuit court of McHenry County.

Affirmed.

NASH, P.J., and SCHNAKE, J., concur.