AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. KATHY S. (JOHNSON) BLACKBURN, Indiv. and as Adm'r of the Estate of Phillip M. Johnson, and as Mother and Next Friend of Phillip M. Johnson, Jr., *et al.*, Minors, Defendant-Appellant (Betty Louise Johnson, Indiv. and as Adm'r of the Estate of Wendell O. Johnson, Deceased, Defendant).

Fourth District   No. 4—90—0029

Opinion filed January 31, 1991.

Carl W. Telford, of Law Offices of Carl William Telford, Ltd., of La Salle, and Josette Skelnik, of Robinson & Skelnik, of Elgin, for appellant.

David A. Novoselsky & Associates, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellee.

James E. Tueth, of Decatur, guardian *ad litem*.

PRESIDING JUSTICE LUND delivered the opinion of the court:

This appeal is from a summary judgment entered in favor of plaintiff, American Family Mutual Insurance Company (American Family), a corporation, in a declaratory judgment action brought against Kathy S. (Johnson) Blackburn, individually and as administrator of the estate of Phillip M. Johnson, and as mother and next friend of Phillip M. Johnson, Jr., and Bradley Johnson, minors (Blackburn), and Betty Louise Johnson, individually, and as administrator of the estate of Wendell O. Johnson, deceased (Johnson). The occurrence from which this action commenced was the killing of Phillip M. Johnson on July 4, 1981, by his father, Wendell O. Johnson, during a fight at a campground near Lake Shelbyville. On September 23, 1988, defendant Blackburn obtained a judgment based on an allegation of a negligent act against the estate of Wendell O. Johnson, deceased. Wendell died in 1982 during the pendency of Blackburn's action. See *Blackburn v. Johnson* (1989), 187 Ill. App. 3d 557, 543 N.E.2d 583.

Wendell Johnson carried a homeowner's policy with American Family which would have provided coverage for negligent (but not intentional) acts. A condition of the policy provided that in the event of an occurrence, the insured must "give prompt notice to [American Family] or our agent," and required the insured to "promptly forward to us any notice, demand and legal paper relating to the accident or occurrence."

The wrongful-death action was filed on July 6, 1982, and the service on Wendell was at a time when he was near death with cancer. American Family was not made aware of the occurrence until September 20, 1985, well after Wendell's death. On October 9, 1985, American Family sent a letter to Betty Johnson, acknowledging it had received notice of the wrongful-death litigation. The letter pointed out that Betty Johnson had been served on July 6, 1982, and that there had been a failure to forward notice to American Family. The prompt-notice provision in the

the required notice "seriously prejudiced this company in handling of this lawsuit. We disclaim any liability under the aforementioned policy" due to the breach. The letter further pointed out that the policy expressly excluded coverage for intentional acts and set forth the provision in the policy so providing. The letter then concluded with the following provisions:

"[1] It is the position of American Family Mutual Insurance that it is not obligated under the terms and provisions of the aforesaid policy to pay any judgment entered in this case based on liability for an intentional act. However, it cannot be determined from the four corners of the complaint whether the incident complained of arose from an intentional act or an act of negligence. We are aware that the firm of Burger Fombelle and Devorak of Decatur, Illinois is defending you on this action.

█ It must [be] understood and agreed that by proceeding with the investigation of this lawsuit, American Family Insurance Company does not assume any liability, does not waive the denial of its liability, does not waive its right to rely upon the policy provisions, terms, conditions and exclusions and does not agree to pay any settlements that may be negotiated or judgments that might be rendered against you, hereby reserving all of its rights under the policy. It is further understood, of course, that you do not waive your right to contest the validity of our position.

█ Unless you send us written notice to the contrary by Certified Mail within ten days, we shall assume that you agree to our handling of this matter, subject to the full reservation of all of our rights. If you do not agree with this, please notify us in writing immediately."

On March 11, 1986, American Family filed the declaratory judgment action. Apparently the only significant asset available to pay any part of the $599,000 wrongful-death judgment is the homeowner's policy coverage. American Family's complaint sought a determination that it had no duty to defend or provide coverage because of the failure to provide prompt notice of the underlying occurrence. Subsequently, the complaint was amended to include the defense of the insured's act being an intentional tort which would not be covered by the policy.

Blackburn filed a motion for summary judgment in this action on October 17, 1988, contending American Family was estopped from asserting noncoverage because American Family had failed to provide a defense for the wrongful-death action and had failed to bring the declaratory judgment to resolution prior to the completion of the wrongful-death trial. The wrongful-death case resulted in a verdict returned on

September 23, 1988. Blackburn's motion for summary judgment was denied, and defendant now contends the trial court erred in so ruling.

■ American Family initially contends Blackburn and Johnson waived any error relating to the denial of the summary judgment because their notice of appeal did not refer to the court's adverse ruling against them. The notice of appeal did ask for reversal of the trial court's later summary judgment in favor of American Family. We find *Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 394 N.E.2d 380, controlling. In *Burtell*, the supreme court observed that an appeal from a subsequent final order draws in question all prior nonfinal orders and rulings which preceded the judgment. (*Burtell*, 76 Ill. 2d at 433, 394 N.E.2d at 382.) The prior denial of defendant's motion for summary judgment, absent a Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)) finding, was not an appealable order and falls within the *Burtell* rule. See also *Lakeview Trust & Savings Bank v. Estrada* (1985), 134 Ill. App. 3d 792, 804-05, 480 N.E.2d 1312, 1321-22.

■ American Family would not have owed a duty to defend or to pay if the wrongful-death action had alleged only an intentional act. However, both intent and negligence were alleged. As indicated by previous decisions of Illinois courts, defending both claims, intentional and negligent acts, would have put American Family in a position of conflict, since a verdict based on an intentional act would free American Family from coverage, while a verdict based upon negligence would result in coverage. When such conflicts arise, insurance companies must be freed from the responsibility to defend, but are generally responsible for paying the expenses incurred by the insured in defending. *Thornton v. Paul* (1978), 74 Ill. 2d 132, 384 N.E.2d 335.

In the present case, the defense of the wrongful-death action was undertaken on behalf of the estate by private counsel who had previously accepted a $20,000 retainer fee in the criminal case against Wendell. Wendell's prosecution obviously terminated upon his death, and his widow requested a refund for a portion of the $20,000. The attorney refused a refund, but offered instead to defend the wrongful-death action without additional cost. At no time did American Family offer to defend or to pay for the defense. At no time was American Family requested to defend or pay for the defense. The actual defense had proceeded from July 6, 1982, for a period of three years prior to American Family having received notice of the occurrence. Deposition evidence indicated that Johnson, individually and as administrator, indicated no interest in American Family's providing or paying for the defense.

■ The confusion in the present case arises because Wendell and subsequently his estate were already being defended at the time Ameri-

can Family received notice of the occurrence. The attorney fees were paid as a result of the refusal to refund part of the criminal charges. There also does not appear to have been any demand on American Family to defend, and we have not found a case indicating an insurance company has a responsibility to notify the insured of its duty to defend or pay for the defense. Considering the factors which existed in this case, we conclude the trial court was correct in holding against Blackburn and Johnson on this argument.

Blackburn next contends that American Family is estopped from raising policy defenses due to its failure to resolve the declaratory judgment prior to the resolution of the underlying tort action. We do not agree.

The declaratory judgment initially sought only to litigate the failure of the notice issue, which alone could have been determined prior to the tort action. That issue did not necessarily involve the question of whether Wendell's acts were negligent or intentional. However, the negligent versus intentional issue was made a part of the declaratory judgment action after the jury verdict on September 23, 1988, and, in reality, was recognized by all parties once American Family was notified of the occurrence. As we have stated, it was specifically mentioned in the initial letter to Johnson.

We recognize that in many cases it would be best to litigate the question of coverage before trial of the negligence issue. However, problems arise when the coverage issue is "closely and directly connected with the issue" of liability to an injured party. (See *Great American Insurance Co. v. Ratliff* (E.D. Ark. 1965), 242 F. Supp. 983, 990; *Thornton*, 74 Ill. 2d at 157, 384 N.E.2d at 345-46.) The *Thornton* opinion explains that an injured party should not be forced, by a declaratory judgment action, to litigate the liability issue in a different forum than that of his choice, at a different time, and with a different order of proof. *Thornton*, 74 Ill. 2d at 158, 384 N.E.2d at 346.

While we have not found a declaratory judgment case similar to the present one which initially only alleged insufficient notice and then amended the complaint, after the underlying case verdict, to include the negligent versus intentional issue, we conclude under these facts it would be improper to bar American Family from the policy defense because of the timing of the declaratory judgment decision. We acknowledge our reasoning is based in part upon our earlier determination that American Family could not, because of the conflict, defend; and, because Wendell's estate was already defending at the time, American Family would have received notice of the occurrence.

We next dispense with the claim that American Family had ef-

fective notice of the occurrence because its local agent read of the death of Phillip M. Johnson and the resulting criminal action against Wendell. The complexity of the criminal action, which would indicate an intentional act, negates this contention. The policy does not cover intentional acts, and to place a burden on all insurance agents to infer possible policy coverage whenever they read of an act of violence is unreasonable.

The final issue is whether notice to American Family was reasonable under the circumstances and, therefore, complied with the policy requirements. Provisions in policies stating when the insurer must be notified of a covered occurrence have generally been interpreted to require notification of the company within a reasonable time, considering all the facts and circumstances of the particular case. (*Barrington Consolidated High School v. American Insurance Co.* (1974), 58 Ill. 2d 278, 281, 319 N.E.2d 25, 27.) While an absence of actual prejudice to the insurer may be a factor to be considered in determining the propriety of the notice, it does not conclusively establish the timeliness of the notice. (*Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.* (1985), 138 Ill. App. 3d 574, 581, 485 N.E.2d 1281, 1286; *United States Fidelity & Guaranty Co. v. Maren Engineering Corp.* (1980), 82 Ill. App. 3d 894, 898, 403 N.E.2d 508, 511.) Thus, where the notice is late, the issue is not whether the insurer has been prejudiced but rather whether reasonable notice has been given. *Mitchell Buick & Oldsmobile,* 138 Ill. App. 3d at 581, 485 N.E.2d at 1286; *Maren Engineering,* 82 Ill. App. 3d at 898, 403 N.E.2d at 511.

Among factors to be considered in determining if an insured acted within a reasonable time in giving notice are (1) the presence or absence of the insured's sophistication in the world of commerce and insurance; (2) awareness on the part of the insured that an occurrence as defined by the policy has taken place; and (3) once aware of an occurrence, the diligence with which the insured ascertains whether policy coverage is available. (*Brownlee v. Western Chain Co.* (1979), 74 Ill. App. 3d 804, 808-09, 393 N.E.2d 515, 518.) Generally, the question of what is reasonable notice is a question of fact but, if there is no controversy as to the facts, the question of reasonableness is a question of law. *Olivieri v. Coronet Insurance Co.* (1987), 173 Ill. App. 3d 867, 871, 528 N.E.2d 986, 989.

Blackburn maintains that a review of the circumstances establishes, as a matter of law, that notice in this case was reasonable. She acknowledges the incident happened on July 4, 1981, and that American Family did not find out about it until Blackburn served a subpoena on it in September 1985. However, she believes there are circumstances which explain the delay.

First, she observes the lawsuit was not filed until July 6, 1982. Johnson testified that neither she nor Wendell anticipated being sued because Blackburn had only spoken of suing certain dramshops. When the papers were received in 1982, Wendell was near death from cancer and had deteriorated physically, emotionally, and mentally. Johnson admitted reading the papers, but stated she could not understand half of it. She also stated that she left all insurance matters to Wendell and she had never been involved in a lawsuit. Blackburn also points out Johnson had only a high school education and had no knowledge that an incident of this type would be covered by her homeowner's insurance. Thus, Blackburn maintains that, due to Johnson's education, experience, and the circumstances surrounding the incident, it is perfectly reasonable she did not notify American Family immediately.

Blackburn cites several cases she believes support her position. One is *Farmers Automobile Insurance Association v. Hamilton* (1975), 31 Ill. App. 3d 730, 335 N.E.2d 178, in which the insured shot another person on February 7, 1970. On February 12, 1971, the insured notified insurance company that he had been served with summons on a personal injury suit. The court found that because this was the type of incident which a reasonably prudent person would not believe to be covered by the homeowner's policy, it cannot be concluded as a matter of law that the notice was late and a question of material fact had been raised concerning the propriety of the notice.

In *Barrington Consolidated High School*, the victim was allegedly injured in 1965. However, suit was not filed until 1969, at which time the insurance company was notified. The supreme court concluded this notice was timely. It observed that until the suit was filed in 1969, there was no ground for the insured to reasonably believe that a claim was likely to be made.

Blackburn also relies on *Allstate Insurance Co. v. Carioto* (1990), 194 Ill. App. 3d 767, 551 N.E.2d 382. There, the insured, a psychologically disturbed 19-year-old, attacked and injured the victim on the streets of Chicago in 1982 and was criminally prosecuted. Approximately 31 months later, he was served with summons for a civil suit which his criminal defense attorney turned over to the insurance company. The court found the notice proper because, under the circumstances, the insured cannot be expected to know that a tort claim arising out of this incident would be covered by his mother's homeowner's insurance policy, and because the insurer suffered no prejudice by the delay.

Blackburn argues that similarly in the present case Johnson cannot be expected to know that her homeowner's insurance would cover a

knifing incident which occurred at a campground far from her home. We note that notices were given in the three cited cases soon after the tort actions commenced.

Blackburn also observes that notice by the injured party is as effective as notice supplied by the insured for the purpose of fulfilling the insured's obligation, and is measured by the same standards as if it had been conveyed by the insured. (*Olivieri*, 173 Ill. App. 3d at 871, 528 N.E.2d at 989.) She observes that due to Johnson's confusion about the existence of a policy potentially covering the incident, Blackburn could not have learned about existence of the policy through due diligence. She observes that in April 1984 Johnson was still saying under oath that no such insurance existed, and that it was not until October 1984 that the possibility of the existence of coverage was recognized. Thus, Blackburn believes she acted reasonably.

Furthermore, Blackburn argues that American Family suffered no prejudice. First, she observes that American Family did not attempt to undertake any investigation. Thus, she maintains American Family cannot complain of prejudice. Second, she argues that all the witnesses had given statements and their names are contained in police reports and reports for the civil trial. She maintains no further investigation need be done. She observes American Family argued at trial that it was prejudiced because it did not have an opportunity to interview Wendell, because Wendell died before American Family knew of the incident. She suggests this position is misleading. She notes that Wendell was charged with a serious criminal offense up to the date of his death and that American Family's counsel, Van Horn, acknowledged Wendell's criminal defense attorney most likely would have instructed Wendell not to speak with American Family about the incident. Thus, she maintains American Family suffered no prejudice in this regard.

American Family responds that a delay of over four years from the time of the incident and over three years from the time of the suit being filed is unreasonable. It makes the argument that Johnson was sophisticated, an argument that is not substantiated in the record.

American Family does argue that Johnson was represented by counsel throughout the proceeding. It maintains that the court must not only look at the insured but also at the sophistication of persons acting on her behalf. It insists the fact Johnson was represented the entire time indicates she should have had knowledge of the possible coverage much earlier and, therefore, that delay is not excusable.

American Family also argues that even if it is accepted that Johnson did not become aware of the possibility of coverage until October 1984, she still did not notify American Family. American Family did not re-

ceive notice until it received a subpoena from Blackburn almost one year later. American Family observes there is no explanation for this failure.

As a general rule, most time delays in giving a notice of this sort would result in relief for the insurer, and American Family cites a number of cases in which that happened. Blackburn cites cases she believes create exceptions and support her position. However, as we have said, it appears from reviewing the facts of those cases (*Carioto*, 194 Ill. App. 3d 767, 551 N.E.2d 382; *Barrington Consolidated High School*, 58 Ill. 2d 278, 319 N.E.2d 25; *Hamilton*, 31 Ill. App. 3d 730, 335 N.E.2d 178) that the delay was between the occurrence and the insured becoming aware of a lawsuit through the service of papers. In each case, the insurer appeared to be promptly notified once the insured was served with the papers. This is not what happened in the current case. The incident occurred in July 1981, and the insured were served with papers in July 1982. It was not until over three years later that the insurer was notified. Even if the conduct of Johnson and counsel can be excused until October 1984 when Johnson became aware of possible coverage, there is no explanation for the failure to notify the insured at that time. This further delay itself is unreasonable and, without any explanation, could defeat coverage.

■■■ We consider Blackburn's argument that American Family was not prejudiced by the delay in receiving notice to be speculative. Assuming notice immediately after the wrongful-death action was commenced, American Family would have had the opportunity to investigate while the occurrence was much fresher in the minds of the various witnesses. Perhaps Wendell could have been deposed, perhaps not. Perhaps settlement would have been discouraged, and perhaps not. In our view, having the right to so act is part of the benefit of the prompt-notice provision. We conclude, based upon the facts in this case, that there was a violation of the prompt-notice condition, and that the trial court's summary judgment order in favor of American Family was correct. Any other decision would cast doubts on the enforceability of any prompt-notice insurance policy provision.

Affirmed.

GREEN and McCULLOUGH, JJ., concur.