CINCINNATI INSURANCE COMPANY, Plaintiff-Appellant, v. BAUR'S OPERA HOUSE, INC., d/b/a Baur's Opera House, *et al.*, Defendants-Appellees.

Fourth District   No. 4—97—0672

Opinion filed April 22, 1998.—Modified on denial of rehearing June 3, 1998.

Bradley T. Paisley (argued), of Erickson, Davis, Murphy, Johnson, Griffith & Walsh, of Decatur, for appellant.

Steven C. Ward (argued), of Heckenkamp, Simhauser, Ward & Zerkle, of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Mark W. Stearnes filed a personal injury lawsuit in state court against defendant Baur's Opera House, Inc. (Baur's). Baur's was insured by plaintiff, the Cincinnati Insurance Company (Cincinnati). Cincinnati filed a declaratory judgment action against defendants alleging it was not obligated to defend or indemnify Baur's because neither of the defendants notified it of the state lawsuit, thereby breaching the insurance policy. Cincinnati and Stearnes filed cross-motions for summary judgment arguing whether Cincinnati received reasonable notice of the lawsuit. The trial court denied Cincinnati's motion and granted Stearnes' motion. We find insufficient evidence proving Cincinnati received reasonable notice of the state lawsuit. We reverse and remand the trial court's judgment.

## I. BACKGROUND

In January 1991, Stearnes filed a complaint in the United States District Court for the Central District of Illinois. The origin of the complaint was an altercation between Stearnes and Baur's employees in February 1990. The complaint alleged Baur's employees discriminated against Stearnes based on his race. The complaint further alleged negligence, false imprisonment, false arrest, and malicious prosecution claims against Baur's. Baur's was served with a summons and copy of the complaint in January 1991. Baur's notified Cincinnati of the federal lawsuit and Cincinnati retained attorneys to defend Baur's.

Cincinnati's attorneys conducted discovery, filed interrogatories, and took 14 depositions in response to Stearnes' cause of action. In February 1992, the attorneys filed a motion for summary judgment, which was granted in March 1992. See *Stearnes v. Baur's Opera House, Inc.*, 788 F. Supp. 375, 379 (C.D. Ill. 1992). In a letter dated April 1992, the attorneys notified Cincinnati of the district court's decision and stated "[w]e can anticipate [p]laintiff's attorney refiling the [s]tate claims in [s]tate [c]ourt." The district court's decision was appealed to the United States Court of Appeals for the Seventh Circuit, and upon remand, the complaint was dismissed for lack of jurisdiction in November 1993. See *Stearnes v. Baur's Opera House, Inc.*, 3 F.3d 1142, 1145 (7th Cir. 1993).

In March 1993, before Stearnes' time ran out for filing a complaint in state court (735 ILCS 5/13—217 (West 1992)), he filed a complaint in the circuit court of Sangamon County, alleging state law claims identical to those alleged in the federal complaint. In April 1993, George W. Baur (George), principal owner of Baur's, was served with a summons and a copy of the state complaint. In June 1993,

George died. After his death, Cincinnati's attorneys continued to represent Baur's in the federal lawsuit. However, George's estate failed to notify Cincinnati or its attorneys of the state lawsuit. In January 1994, Paul Presney, Sr., an attorney not retained by Cincinnati, filed an appearance on behalf of Baur's in the state lawsuit.

In July 1995, Baur's filed bankruptcy. As a result, Stearnes' state lawsuit was automatically stayed. In September 1995, the bankruptcy court granted Stearnes relief from the automatic stay and provided him with leave to pursue any available insurance. In October 1995, Stearnes' attorney contacted Cincinnati regarding settlement negotiations. In November 1995, Cincinnati responded by stating it was investigating the claim and would contact Stearnes after it reviewed the case. Cincinnati also sent a letter to the bankruptcy trustee, Mariann Pogge, notifying her it intended to defend Baur's pursuant to its reservation of rights. In December 1995, Cincinnati sent a second letter to Pogge informing her coverage was being denied because Baur's failed to provide reasonable notice of Stearnes' state lawsuit.

In January 1996, Cincinnati filed this declaratory judgment action, arguing it did not receive reasonable notice of the state lawsuit. Cincinnati argued Baur's insurance policy was breached; therefore, it did not have a duty to defend, indemnify, or otherwise cover Baur's in regard to the state lawsuit. Stearnes responded arguing Cincinnati, via the federal lawsuit, received sufficient notice of the state cause of action. Baur's never responded to the declaratory judgment action.

Cincinnati and Stearnes filed cross-motions for summary judgment arguing whether Cincinnati received reasonable notice. In April 1997, the trial court granted Stearnes' motion. In May 1997, the trial court denied Cincinnati's motion to reconsider. In July 1997, as a result of Baur's failure to appear or otherwise plead, the court entered a finding pursuant to Illinois Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), which permitted Cincinnati to file this appeal.

## II. ANALYSIS

On appeal, Cincinnati contends the trial court erred in denying its summary judgment motion and granting Stearnes' summary judgment motion. When reviewing summary judgment motions, the evidence is reviewed *de novo* and construed in the light most favorable to the nonmovant. See *Walker v. Rogers*, 272 Ill. App. 3d 86, 89, 650 N.E.2d 272, 274 (1995), citing *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 518, 622 N.E.2d 788, 792 (1993). Summary judgment is properly entered when the pleadings, depositions, admis-

sions, and affidavits fail to establish a genuine issue of material fact, thereby entitling the movant to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994).

Further, the movant bears the burden of persuasion and the initial burden of production. *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380, 313 N.E.2d 457, 459 (1974); *Rice v. AAA Aerostar, Inc.*, 294 Ill. App. 3d 801, 805, 690 N.E.2d 1067, 1070 (1998). Only if the movant satisfies the initial burden of production does the burden shift to the nonmovant to present some factual basis arguably entitling him or her to a favorable judgment. See *Carruthers*, 57 Ill. 2d at 380, 313 N.E.2d at 459; *Rice*, 294 Ill. App. 3d at 805, 690 N.E.2d at 1070.

Baur's insurance policy requires its proprietors to notify Cincinnati of any lawsuit filed against Baur's. The policy states the following:

> "4. Insured's Duties in the Event of Occurrence, Claim or Suit.
>
> (a) In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practicable.
>
> (b) If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons, or other process received by him or his representative."

Cincinnati argues Baur's breached the insurance policy when it failed to notify Cincinnati of the state lawsuit within a reasonable time period.

■ A notice provision, such as the one in this case, is a valid condition precedent and not a mere technical requirement for the convenience of the insurer. *Millers Mutual Insurance Ass'n v. Graham Oil Co.*, 282 Ill. App. 3d 129, 140, 668 N.E.2d 223, 231 (1996). Generally, Stearnes may garnish Baur's insurance fund only if Baur's could have collected on the insurance policy. Thus, Baur's failure to comply with the notice provision allows Cincinnati to deny coverage under the insurance policy, absent some public policy reason barring Cincinnati from raising this defense. See *Reisman v. Delgado*, 117 Ill. App. 3d 331, 333-34, 453 N.E.2d 902, 904 (1983). Compliance with the provision requires notification of the lawsuit within a reasonable time period, considering all the facts and circumstances of the particular case. See *American Family Mutual Insurance Co. v. Blackburn*, 208 Ill. App. 3d 281, 288, 566 N.E.2d 889, 893 (1991).

Despite the language contained in the insurance policy, Baur's need not forward "every demand, notice, summons, or other process" received in connection with the lawsuit. Cincinnati is liable under the insurance policy so long as it received "actual notice," *i.e.*, notice sufficient for it to locate the lawsuit and defend Baur's. See *Keepers v. Powell*, 131 Ill. App. 2d 423, 427, 268 N.E.2d 488, 491 (1971); *Long v. Great Central Insurance Co.*, 190 Ill. App. 3d 159, 168, 546 N.E.2d 739, 744 (1989).

## A. Actual Notice

■ Stearnes contends Cincinnati's defense of Baur's in the federal lawsuit provided sufficient notice of the state lawsuit. He argues Cincinnati, by denying coverage, is relying on a technical breach of the notice provision unrelated to its ability to investigate the allegations or its obligation to represent Baur's. See *Casualty Insurance Co. v. E.W. Corrigan Construction Co.*, 247 Ill. App. 3d 326, 332-35, 617 N.E.2d 228, 233-35 (1993). Stearnes' reliance on *Corrigan* is misplaced. Contrary to Stearnes' assertions, notice of a federal lawsuit does not equate to "actual notice" of a later state lawsuit, regardless of the similarities between the complaints. Instead, the *Corrigan* court concluded once an insurer receives notice of a claim under its insured's workers' compensation insurance policy, it has notice of any lawsuits arising out of the same occurrence covered by its insured's general liability insurance policy. This notice is also sufficient for lawsuits brought against any additional insureds listed under the general liability policy. *Corrigan*, 247 Ill. App. 3d at 333, 617 N.E.2d at 233-34.

Stearnes did not bring one lawsuit seeking to recover under multiple insurance policies. Rather, he brought two lawsuits in separate and distinct court systems. Essentially, Stearnes argues Cincinnati bears the burden of locating the state lawsuit for a period of one year following the dismissal of the federal lawsuit because a state lawsuit should have been expected. Cincinnati does not bear this burden. The mere possibility Stearnes would file suit in state court is insufficient to constitute "actual notice" of the lawsuit. See *Rice*, 294 Ill. App. 3d at 808, 690 N.E.2d at 1072; *Johnson v. Samuels*, 40 Ill. App. 2d 417, 420, 189 N.E.2d 780, 782 (1963).

The failure of George or his estate to forward a copy of the lawsuit to Cincinnati or its attorneys breached Baur's insurance policy. Stearnes' attorney knew Cincinnati retained attorneys to defend Baur's in the federal lawsuit and could have preserved his client's rights to garnish the insurance fund in any number of ways. See *Rice*, 294 Ill. App. 3d at 808, 690 N.E.2d at 1072. Based on this rec-

ord it appears Cincinnati did not receive "actual notice" of the state lawsuit until Stearnes initiated settlement negotiations in October 1995, 2½ years after the lawsuit was filed.

## B. Notice Within a Reasonable Time Period

What constitutes reasonable notice, usually a question of fact, becomes a question of law when, as in this case, the facts are not in controversy. *Blackburn*, 208 Ill. App. 3d at 288, 566 N.E.2d at 894. Cincinnati argues the 2½-year delay was unreasonable, thereby constituting a breach of the insurance policy. Stearnes asserts Cincinnati was not prejudiced by the delayed notice because it already defended the identical claims in federal court; therefore, public policy requires Cincinnati to represent and defend Baur's.

■ Generally, when deciding whether notice was reasonable, the court considers George's (1) sophistication regarding insurance policies, (2) awareness of the occurrence or lawsuit as defined under the terms of the policy, and (3) diligence in ascertaining whether policy coverage is available. See *American Country Insurance Co. v. Bruhn*, 289 Ill. App. 3d 241, 247, 682 N.E.2d 366, 370 (1997); *Blackburn*, 208 Ill. App. 3d at 288, 566 N.E.2d at 894. Additionally, whether Cincinnati suffered prejudice as a result of the delayed notice is a factor to be considered. See *Millers Mutual*, 282 Ill. App. 3d at 141, 668 N.E.2d at 232. However, a lengthy delay in receiving notice is not *per se* prejudicial and may be excused if George's actions were reasonable under the circumstances. See *Bruhn*, 289 Ill. App. 3d at 247-48, 682 N.E.2d at 371.

■ George's failure to forward the documents to Cincinnati or its attorneys was unreasonable. He received notice of the state lawsuit while Cincinnati's attorneys were representing Baur's in the federal lawsuit. He knew Baur's insurance policy required him to notify Cincinnati of the state lawsuit, as evidenced by the compliance with the notice provision during the federal suit. Further, the insurance policy explicitly required George to forward "*every* demand, notice, summons, or other process" he received. (Emphasis added.) George's failure to notify Cincinnati was unreasonable, thereby making the 2½-year delay in receiving notice inexcusable.

Stearnes asserts he did not notify Cincinnati because Presney, Baur's attorney in the state lawsuit, assured his attorney that Cincinnati would be notified of the state lawsuit. Stearnes contends his attorney's detrimental reliance on Presney's statement makes the delay in notice reasonable and excusable. We find this argument unpersuasive. Stearnes' attorney knew Presney was not retained by Cincinnati to represent Baur's in the federal and state lawsuit,

thereby making his reliance on Presney's assurances unreasonable and unjustified.

Previously, the appellate court held lack of prejudice is a factor to be considered only when there is a reasonable excuse for the delay in notice. See *Twin City Fire Insurance Co. v. Old World Trading Co.*, 266 Ill. App. 3d 1, 8-9, 639 N.E.2d 584, 589 (1993). Cincinnati contends the unreasonable delay makes prejudice irrelevant to this court's decision. However, this court recently stated that for Cincinnati to escape liability, it must suffer prejudice as a result of Baur's failure to timely notify it of a lawsuit. See *Rice*, 294 Ill. App. 3d at 807, 690 N.E.2d at 1072. The purpose of the notice of the lawsuit provision is to protect Cincinnati's interests by enabling it to locate and defend the lawsuit. See *Rice*, 294 Ill. App. 3d at 807, 690 N.E.2d at 1071. Cincinnati received notice of the state lawsuit prior to final judgment being entered, thereby providing it with the opportunity to defend its insured. Thus, the provision's purpose has been satisfied and Cincinnati must prove it suffered prejudice.

## C. Prejudice

■ Stearnes contends Cincinnati was not prejudiced by the delayed notice because it already defended the identical claim in federal court; therefore, public policy requires Cincinnati represent Baur's in the state lawsuit. See *Rivota v. Kaplan*, 49 Ill. App. 3d 910, 921, 364 N.E.2d 337, 346 (1977). Cincinnati contends it suffered prejudice because the statute of limitations on contribution claims expired six months before it received notice. In support of its argument, Cincinnati cites section 13—204(b) of the Illinois Code of Civil Procedure (Code) (735 ILCS 5/13—204(b) (West 1994)). Section 13—204(b) of the Code became effective January 1, 1995, and applies retroactively unless it limits any contribution rights vested prior to the statute's enactment. See 735 ILCS 5/13—204(d) (West 1994); *Ganci v. Blauvelt*, 294 Ill. App. 3d 508, 514, 690 N.E.2d 649, 652-53 (1998); *Lin v. City of Chicago*, 276 Ill. App. 3d 13, 14, 657 N.E.2d 8, 9 (1995).

Contrary to Cincinnati's assertions, we find section 13—204(b) of the Code inapplicable because Baur's rights to seek contribution vested prior to its enactment. However, once Baur's received notice of Stearnes' state lawsuit in April 1993, its contribution rights accrued pursuant to section 5 of the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/5 (West 1992)). See *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 459, 557 N.E.2d 873, 877 (1990); *Caballero v. Rockford Punch Press & Manufacturing Co.*, 244 Ill. App. 3d 333, 336, 614 N.E.2d 362, 364 (1993). For example, Baur's could have sought contribution from those employees who were involved in the

altercation with Stearnes acting outside the scope of their employment. Under section 5 of the Act, any action brought by Baur's seeking contribution was subject to the same statute of limitations applicable to Stearnes' underlying cause of action, which began to run when George was served with process in April 1993. See *Caballero*, 244 Ill. App. 3d at 337-38, 614 N.E.2d at 365.

Because Stearnes' federal lawsuit was dismissed in March 1992 for lack of jurisdiction, his refiling of the lawsuit in state court was subject to a one-year statute of limitations. See 735 ILCS 5/13—217 (West 1992). However, the statute of limitations applicable to the underlying cause of action, *i.e.*, Stearnes' personal injury lawsuit, was two years. See 735 ILCS 5/13—202 (West 1992). Thus, Baur's had until April 1995, or two years from the day it received notice of the state lawsuit, to file an action seeking contribution. See *Lin*, 276 Ill. App. 3d at 14, 657 N.E.2d at 9 (plaintiff's personal injury lawsuit against the City of Chicago was subject to a one-year statute of limitations imposed by the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/8—101 (West 1992)); however, the City of Chicago's contribution claim was subject to the two-year limitation on personal injury claims because the personal injury lawsuit was the underlying cause of action).

Stearnes asserts the federal lawsuit was, in effect, an underlying action for the state lawsuit. He contends Cincinnati's failure to raise its contribution claims during the pendency of the federal lawsuit prohibits it from raising contribution claims thereafter. However, for purposes of contribution actions, the federal lawsuit is not an original underlying action from which Baur's contribution right arose; rather, the state lawsuit is a new and distinct cause of action from which Baur's rights to contribution arise. Recently, the supreme court addressed whether an action brought pursuant to section 13—217 of the Code constitutes a new and distinct action. In *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 504, 687 N.E.2d 871, 875 (1997), the court held actions brought pursuant to section 13—217 of the Code constitute new and distinct actions separate from those actions previously filed. Therefore, Stearnes' state lawsuit constitutes a new and distinct cause of action.

Stearnes also contends Cincinnati's rights to contribution do not exist because Stearnes himself was unable to file a claim against any third-party defendants. However, this argument assumes facts not before the court on summary judgment. Neither the court nor Stearnes knows from whom Cincinnati may seek contribution. Stearnes' inability to locate third-party defendants does not infringe upon Cincinnati's right to seek contribution.

1020

Accordingly, we conclude the 2½-year delay in receiving notice did prejudice Cincinnati's ability to seek contribution on behalf of Baur's.

## III. CONCLUSION

For the reasons stated, we reverse and remand the trial court's judgment. Cincinnati's summary judgment motion may be resubmitted, including evidence consistent with this court's opinion in *Rice*, 294 Ill. App. 3d at 809, 690 N.E.2d at 1072.

Reversed and remanded for further proceedings.

GARMAN, P.J., and STEIGMANN, J., concur.